By the Court.—Freedman, J.
On the motion for the continuance of the injunction during the pendency of the action, it was held (14 Abb. Pr. N. S. 206), that, for the purposes of that motion, it sufficiently appeared that the plaintiff had the right to the exclusive use of the device adopted by him as a trade-mark. The rights of the parties were thereupon determined as they appeared by affidavit, and I have no hesitation in saying that in my opinion they were correctly determined upon the proof then before the court. Consequently, if the proof given upon the trial established the same facts, as appeared on the motion, and no others, the judgment should be affirmed.
But the oral testimony given upon such trial, ma *276 terially changed the case previously made by the1 plaintiff.
The following facts then appeared a,nd were found' by the learned j udge who tried the cause, viz.:
I. For more than twenty-five years past, dowm to this action, large quantities of lard, in a crude or natural state, have been sent from other parts of this-country, especially from the west, to this city, and here-dealt in as articles of trade and commerce ; and during-that time there has been, in the city and neighborhood,, a business of refining such crude or natural lard. The-product of such business was, among other names, called refined lard. Refined lard is whiter and harder than crude or natural lard, and better fitted to be sent-to hot climates; but refining does not change its appearance, except to the eye of an expert. It had a, better price in market. The principal market for refined lard has been in California, the West Indies, and the western coast of South America. Down to about the year 1861, the business of making refined lard was-small; but since that time it has greatly increased, and become important. The best quality, both of crude-lard and of refined lard, has been commercially known, as prime leaf lard ; but the business of dealing in crude- or natural lard is a different one from that of making and dealing in refined lard, and the former is, in general, carried on separately from the latter. During that time, the commercial demand, here, for refined lard, has been for the purpose of shipping it to or througk tropical climates; and of crude lard, for the purpose of supplying other markets. Refined lard has been packed, for exportation, in tin and wooden vessels, but much larger quantities in tin than in wooden vessels.
II. The plaintiff has been, for fifteen years before this action, in the business of making and selling re' fined lard, and during that time has, in that business, *277 packed the lard made by him for sale, in tin cases and pails, and in wooden kegs, tubs, barrels, and tierces, -and habitually and generally stamped or painted upon such packages a figure of a swine, together with words showing the quality of the lard: “Pig Prime Leaf Lárd,” and his name and place of business. This figure, thus used by the plaintiff, is so shaped as to represent a domesticated swine, pig, or hog.
III. In the years 1856 to 1861, both inclusive, Mr. Johnson, in this city, was interested with, first, Mr. Bird, then Mr. Robins, and finally Mr. Brewster, in the business of making and selling refined lard. In such business, the refined lard was packed for sale in tin oases and pails, and kegs, tubs, barrels, and tierces; and, upon the wooden packages, the persons specified used, in connection with their names and the words, showing the quality of lard, the figure of a pig or hog, the same being painted or stenciled upon the wood. In 1865 or 1866, the defendants, at the request of a merchant in Liverpool, who, from time to time, bought from them quantities of refined lard, painted or stenciled upon the wooden vessels, in which the lard was shipped, the figure of a pig or hog. In 1861 or 1862, a •quantity of refined lard was, by some person in Boston, offered for sale in New York, and twelve caddies of such lard was sent to this city. The caddies were wooden vessels; upon them was placed a figure of a pig or hog, on silvered paper. The figure of a pig or hog has not been used, in the trade, upon tin vessels containing refined lard. '
Upon these findings, the exclusive right of the plaintiff to the use of said figure, should at least have been confiped to its use on tin vessels; and consequently the judgment grounded thereon, which secures to the plaintiff the exclusive right to the use of said figure -upon all kinds of packages of refined lard, is too •broad, in any aspect of the case.
*278 The next question, therefore, is whether the plaintiff acquired an exclusive right to its use on tin vessels. He claims to have used it for fifteen years; but, on the witness-stand, he could not tell who invented the device for use, either on crude or refined lard.
The evidence establishes that, since 1845, the figure of a hog or swine has been extensively used, on natural or crude lard, by many persons, as a portion of, or in combination with their brands ; that, since 1856, it has been extensively used on refined lard, packed in wooden vessels; that, for a long time past, refined lard has. been and is still shipped, by the trade, to the- South American and other foreign ports, as well in tin as in wooden packages; and that, from 1860 to 1868, Amos H. Brewster, as a refiner, used the said figure or mark on tin boxes, though not on the tin packages themselves.
From these circumstances, it is evident that the plaintiff can have no exclusive right to the use of the figure of a pig or swine, on packages of natural or crude lard, nor to its use on wooden packages of refined lard; and that the defendants can not be restrained from its use on such packages. Nor can the defendants be enjoined from refining lard, or from putting it up in tin packages. Consequently, a judgment which secures to the plaintiff, exclusively, the right of the use of the device on tin packages, would not protect the plaintiff' so much in the use of his trade-mark, as in the manner of its use. It would be the vessel on which it is used to which the protection is really extended. But tin vessels were and are in common use, by the trade, for packing refined lard, and the vessels used by the plaintiff for exportation were, by the learned judge below, found to be of the same shape and size as those in common use ; from which fact, the inference may be fairly drawn that they are common merchandise, that can be readily bought, by all dealers, in open market.
*279 There is nothing, therefore, either in the figure itself or in the con) bi nation in which it is used by the plaintiff, which gives the plaintiff an exclusive right.
The judgment should be reversed and a new trial ordered, with costs to appellant, to abide the event.
Yak Yokst, J., concurred.